ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3717
   FAX: (510) 637-3724
   Abraham.Fine@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 23-CR-0136-AMO |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Date: May 6, 2024 |
| KENYA ELLIS, | Time: 2:00 p.m. |
| | Court: Honorable Araceli Martínez-Olguín |
| Defendant. | |

## INTRODUCTION

Defendant Kenya Ellis submitted two pandemic-loan applications on behalf of a company she had nothing to do with and stole almost $300,000 in the process. At a time of national emergency, Ellis submitted loan applications affirming that her supposed company, Global Processor Inc. ("GPI"), had several employees and tens of thousands of dollars in monthly payroll. In fact, Ellis did not have any connection to GPI, and the employee and payroll figures she provided were false. When she received the money, rather than use it for payroll and other business expenses (as required by the CARES Act), she instead used it to fund her daily life.

But Ellis' fraudulent conduct did not end with her GPI loans. In addition, Ellis helped others, including Frank and Reginald Mosley, submit their own fraudulent PPP loans. Although Ellis has not been charged with conduct beyond the fraudulent GPI loans, her admissions regarding broader PPP fraud are relevant to determining her sentence.

Accordingly, for the reasons set forth below, the government respectfully recommends that the Court sentence Ellis to a low-end Guidelines sentence of 15 months imprisonment, a three-year term of supervised release (with the conditions recommended by probation and set forth in the plea agreement), $3,082,404 in restitution, and a $100 special assessment.

## BACKGROUND

**I.    Offense Conduct**

    **A.    Background on Federal Loan Programs**

The CARES (Coronavirus Aid, Relief, and Economic Security) Act is a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. *See* Presentence Investigation Report ("PSR") ¶¶ 6-9. One source of relief provided by the CARES Act was the authorization of hundreds of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP.

PPP loans were administered by the Small Business Administration (SBA) through approved lenders and were designed to assist small business owners with expenses such as payroll costs, rent, and utilities so that businesses could maintain their workforce during the COVID-19 crisis. The loan amount

was determined by the monthly payroll of the small business. The loan money came directly from the approved lenders to the applicant and was guaranteed by the SBA. To qualify for a PPP loan, the applicant's business must have been in operation on February 15, 2020, have employees, have average monthly payroll costs, and provide documentation to support these assertions. The PPP loan application required the borrower to certify that the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules. In addition, the PPP loan application required applicants to state any other businesses they own, and specify whether they have applied for any other PPP loans.

In addition to PPP loans, struggling business were allowed to apply for the SBA's Economic Injury Disaster Loan (EIDL) Program during the COVID-19 pandemic. EIDL Advances were administered and funded by the SBA. EIDL Advances were designed to give emergency assistance to small business that were experiencing a temporary loss of revenue due to the COVID-19 pandemic. To obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020.

**B.     Ellis' Criminal Conduct**

Between September 2020 and March 2021, Ellis submitted fraudulent PPP and EIDL loan applications on behalf of GPI. *Id*. ¶ 10. On these applications, Ellis affirmed that she was the sole owner and 100% shareholder of GPI. She also affirmed that GPI had several employees and $142,150 in monthly payroll. These representations were false. Despite the fact that GPI was incorporated in 2003, Ellis had nothing to do with the company. Rather, she stole the company's information to apply for her own loan, leaving the company's real owner with significant hurdles when he later tried to apply for pandemic-related relief.

On September 5, 2020, Ellis received $150,000 pursuant to an EIDL loan application she submitted on behalf of GPI. *Id*. ¶ 12. On March 2, 2021, Ellis received $146,737 pursuant to a PPP loan application she submitted on behalf of GPI. *Id*. Rather than use the money for legitimate business

or payroll purposes, as required by the CARES Act, Ellis spent the money on daily life expenses that appear to be unrelated to any business.

In addition to the fraudulent EIDL and PPP loans Ellis received on behalf of GPI, Ellis engaged in additional uncharged criminal conduct. *Id*. ¶ 13. Specifically, between July 2020 and March 2021, Ellis helped Reginald Mosley, Marcus Wilborn, Aaron Boren, and Scott Conway prepare PPP loan applications containing information that she knew or had reason to believe was false. *Id*. The fraudulent loan applications that Ellis helped submit on behalf of Mosley, Wilborn, Boren, and Conway resulted in a loss of $3,082,404 to the government. *Id*.

## II. Procedural Posture

On May 4, 2023, the government filed an Information charging Ellis with one count of bank fraud, in violation of 18 U.S.C. § 1344. ECF No. 1. Ellis was released pending trial. On June 6, 2023, Ellis' case was related to the separate case charging Reginald Mosley, Frank Mosley, Marcus Wilborn, Aaron Boren, and Scott Conway with conspiracy to commit bank fraud. ECF. No. 8. October 2, 2023, Ellis pled guilty to the bank fraud charge against her. ECF No. 12. Per the plea agreement, the parties agreed that the applicable Offense Level under the Sentencing Guidelines is 16 (plus an additional two-point reduction given that Defendant is a zero-point offender), and the government agreed to recommend a sentence at the low-end of the applicable Guideline range, as well supervised release, restitution, and a special assessment. *See* ECF No. 13 at ¶¶ 7, 14.

## ARGUMENT

## I. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed to reflect the seriousness of the

UNITED STATES' SENTENCING MEMORANDUM   4
23-CR-0136-AMO

offense, to promote respect for the law, and to provide just punishment for the offense;

(3)  the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## II.  Sentencing Guidelines Calculation

As set forth in the PSR and the plea agreement, the Sentencing Guidelines calculations for Defendant's offense level is as follows:

|  | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base offense level | §2B1.1(a)(1) | 7 |
| Specific offense characteristics | §2B1.1(b)(1)(G) - Intended loss amount between $250,000 and $550,000 | +12 |
| Adjusted offense level |  | 19 |
| Acceptance of responsibility | §3E1.1 | -3 |
| Zero Point Offender | §4C1.1 | -2 |
| Total offense level |  | 14 |
| Criminal History Category |  | I |
| **RANGE** |  | 15-21 months |

PSR ¶¶ 17-27.

The Probation Officer concluded that Defendant's criminal history score is 0, and he therefore falls into Criminal History Category I. *Id*., ¶ 32. As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 14 and Criminal History Category I is 15 to 21 months. *Id*. ¶ 57. The Probation Officer recommends a sentence of 12 months and one day in prison. *Id*. at Sentencing Recommendation.

## III.  The United States' Sentencing Recommendation

Based on a consideration of the Guidelines and the factors in Section 3553(a), the United States submits that a low-end sentence of 15 months' imprisonment, coupled with a three-year term of supervised release, and the restitution order as set forth in the PSR are sufficient, but not greater than

necessary, to comply with the factors set out above.

Primarily, the government notes that Ellis' charged conduct, submitting multiple fraudulent loan applications on behalf of a company she had no involvement in, was serious criminal conduct. The pandemic loan fraud was undertaken during a time of great national hardship. Many legitimate businesses were in need of the type of PPP and EIDL loan funds that Ellis obtained; the defendant took advantage of a program that was meant to make those funds flow easily to needy legitimate recipients, and not to her. As described above, funding for the PPP program was capped, so any money Ellis obtained from the program did not go to other struggling businesses that needed it.

Moreover, general deterrence and the message this case sends to the public are important principles to consider. As noted above, the government funds at issue in the PPP-loan fraud aspect of this case flowed freely – as they should have – during a time of national hardship. Other individuals who are in Ellis' position now and in the future must know that, on top of a federal felony conviction, defrauding programs like the PPP will result in prison time and monetary penalties.

Along with her fraudulent loan applications on behalf of GPI, Ellis also admitted that she helped others submit their own fraudulent loan applications. While she was not charged directly with this conduct, the government submits that it is relevant to determining her sentence. Like all of the defendants in the related case, Ellis accepted responsibility early and agreed to a pre-indictment resolution. For this reason, the government is recommending below Guidelines sentences for all of the other defendants. With Ellis, however, the government is recommending a sentence within the applicable Guidelines range, largely due to this additional conduct that is not captured by her relatively-low Guidelines range. Furthermore, the restitution amount the parties have agreed to in this case is based on Ellis' involvement in the broader scheme.

Finally, one of the § 3553(a) factors is the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. As the Court might expect, Ellis was not the only person to commit PPP fraud, and many others around the country who committed similar crimes have already been sentenced. A representative sample of some of those

sentences from our district and other districts in California are as follows:[1]

| District | Case Name/Number | Loss Amount | Sentence |
|---|---|---|---|
| N.D.C.A. | *United States v. Christina Burden*, No. 21-CR-0362-YGR | $1,143,191 | 36 Months |
| E.D.C.A. | *United States v. Aaron Ashcraft*, No. 22-CR-0087-KJM | $1,200,000 | 41 Months |
| N.D.C.A. | *United States v. Miranda Devlin*, No. 21-CR-0226-MMC | $565,355 | 18 Months |
| C.D.C.A. | *United States v. Vardan Khalatyan*, No. 22-CR-0441-MCS | $3,000,000 | 51 Months |
| N.D.C.A. | *United States v. Caesar Oskan*, No. 21-CR-0143-CRB | $268,719 | 18 Months |
| C.D.C.A. | *United States v. William Sadleir*, No. 20-CR-0299-DMG | $1,700,000 | 41 Months |
| C.D.C.A. | *United States v. Raymond Magana*, No. 21-CR-0007-SB | $2,237,831 | 41 Months |
| C.D.C.A. | *United States v. Steven Goldstein*, No. 20-CR-0597-SB | $655,000 | 12 Months + 1 Day |
| N.D.C.A. | *United States v. Ester Ozkar*, No. 21-CR-0144-CRB | $483,132 | 12 Months + 1 Day |
| C.D.C.A. | *United States v. Llerenas*, No. 21-cr-0187-JWH | $4,300,000 | 63 Months |
| C.D.C.A. | *United States v. Amiryan*, 20-cr-0520-DMG | $650,000 | 41 Months |

Given the pandemic fraud sentences that have been ordered in this district, other districts in California, and throughout the country, the government submits that a low-end Guidelines sentence of 15 months is appropriate in this case.

//

//

//

//

//

---

[1] Several websites have been tracking CARES Act Fraud cases and sentences, such as https://www.arnoldporter.com/en/general/cares-act-fraud-tracker/ (last updated February 1, 2024).

UNITED STATES' SENTENCING MEMORANDUM   7
23-CR-0136-AMO

# CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Defendant to 15 months in prison, a three-year term of supervised release, $3,082,404 in restitution, and a $100 special assessment.

DATED: May 2, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
ABRAHAM FINE
Assistant United States Attorney